IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF WYOMING

| | | |
|---|---|---|
| In re ) | | |
| ) | | |
| DCD, Inc., a Wyoming Corporation, ) | Case No. 03-21439 | |
| ) | CHAPTER 7 | |
| Debtor. ) | | |
| ) | | |
| RANDY L. ROYAL, Chapter 7 Trustee ) | | |
| of the Bankruptcy Estate of DCD, Inc., ) | | |
| a Wyoming Corporation, ) | | |
| ) | | |
| Plaintiff, ) | | |
| ) | Adv. No. 05-2010 | |
| v. ) | | |
| ) | | |
| MJC Oil & Gas, an entity of unknown ) | | |
| origin or registration and John Does 1-3, ) | | |
| ) | | |
| Defendants. ) | | |

FILED

3:23 pm, 2/8/06

Joyce W. Harris
Clerk of Court

**OPINION ON COMPLAINT**

On December 7, 2005, the court held a trial on the First Amended Adversary Complaint to Set Aside Purported Conveyances of Property as Fraudulent Conveyances and for Turnover filed by Randy Royal, the Chapter 7 Trustee (Trustee) of the DCD, Inc. (DCD) bankruptcy case. The Trustee appeared through his counsel, Anthony Wendtland. The defendants MJC Oil & Gas (MJC) and Melissa Cross (John Doe 1) appeared through counsel, James Edwards. The John Does 2-3 did not appear. The court has considered the testimony and other evidence, the applicable law and the arguments of the parties, and is prepared to rule.

## Jurisdiction

The court has jurisdiction over this adversary proceeding under 28 U.S.C. §§ 157(a) & 1334(a)  This is a core proceeding under 28 U.S.C. § 157(b)(2)(H).

## Findings of Fact

Essentially, the facts are not disputed.  Donald Cross (Cross) is the sole shareholder of the debtor corporation, DCD.  Cross is also the individual debtor in a Wyoming chapter 7 case, no. 03-21436.  Both the DCD and the Cross cases were filed as voluntary chapter 11 cases on July 17, 2003.  The cases were converted to Chapter 7 cases on July 19, 2004 and November 18, 2004, respectively.

Melissa J. Cross (Melissa) is Cross's daughter.  At the time of the trial, Melissa was 26 years old.  MJC is the name under which Melissa received oil royalties, the name on a bank account to which both Melissa and Cross have access, and the name to which DCD (at the direction of Cross) made transfers of oil and gas interests to Melissa.  MJC is not a corporation or other distinct legal entity.  Melissa characterized MJC as a d/b/a.

Cross has been involved in the oil and gas leasing and operating business for 35 years, operating through DCD and DCD Operating, Inc.  DCD's assets are primarily oil and gas leases and well equipment.

<u>Transfers to Melissa Cross</u>

From a very early age, Melissa owned oil and gas working interests in DCD leases. These working interests were not recorded; standard industry practice according to Cross.

Royalty payments from the working interests were paid to Melissa and noted throughout the 1990s on DCD's monthly operating statements. DCD reported the payments to Melissa on Internal Revenue Service Form 1099-Misc. At least some of the royalty payments were made under the Uniform Gifts to Minors Act, now enacted as Wyoming's Uniform Transfers to Minors Act. Wyo. Stat. Ann. § 34-13-114 through 137 (LexisNexis 2005).

At some time in the 1990s, Cross caused DCD to sell Melissa's shallow gas working interests. In exchange, DCD assigned overriding royalty interests (Overrides) in a number of Wyoming wells to MJC as compensation (Assignments). Cross estimated the value of the exchange at $52,000.

The Assignments consisted of four documents dated January 2, 2000. Cross caused the Assignments to be recorded in the appropriate county real estate records on July 10, 2003.

The Assignments were not disclosed in DCD's Chapter 11 Statement of Financial Affairs. The Trustee seeks to avoid the Assignments in this case.

In 2002, Cross opened a checking account in the name of MJC into which Melissa's royalty payments were deposited. Both Cross and Melissa had access to the account, and Cross occasionally used the funds in the account without discussion with Melissa. Melissa testified that Cross managed her oil and gas financial affairs from her childhood until today. Melissa displayed limited knowledge of her oil and gas interests or the oil and gas business in general.

Solvency

Evidence from a variety of sources was introduced that relates to the issue of DCD's solvency or insolvency during the relevant time period. DCD's bankruptcy schedules were prepared with information provided by Cross. On them, DCD listed assets of $2,599,975.00, consisting of real property interests in oil and gas leases of an "indeterminate amount" and oil field equipment and well casing valued at $2,544,395.00. DCD's scheduled liabilities consisted of judgment liens, bond liens, tax claims and unsecured claims totaling $2,160,822.67.

Cross also prepared DCD's monthly chapter 11 financial reports. On the reports, DCD stated assets, including the oil and gas properties, totaling $503,335,449.00.

In its proposed chapter 11 disclosure statement, DCD stated liabilities against the estate of $1,375,000. In its proposed chapter 11 plan, DCD proposed a sale of 90% of its oil and gas properties for $1,300,000.

DCD is a subchapter S corporation that apparently did not file federal income tax returns for the tax years 2000 through 2003. The Trustee retained DCD's former accountant, who prepared and filed the missing tax returns in 2004. Each of the returns includes Schedule L, "Balance Sheets per Books," but no detailed listing of assets or liabilities. The returns state book values for DCD's assets in the tens of thousands.

Cross and his wife filed a joint tax return for the year 2003. They stated income from oil and gas operations of $334,000, claimed a Net Operating Loss Carryover (NOL) of

$1,270,360, and no taxable income. Cross testified at the trial that the NOL was actually a coal bed methane production tax credit. DCD's accountant also prepared the individual tax returns.

On August 17, 2005, this court held a hearing in the DCD case on the Trustee's intent to sell all of DCD's property for $1,600,000. Cross objected and submitted a proposed counteroffer of $2,000,000. The court approved the Trustee's sale and the sale has been consummated. At the trial in this case, the Trustee was equivocal about whether or not the chapter 7 estate would have sufficient funds to pay all of the claims in full and return funds to Cross's individual case.

Cross objected to a number of proofs of claim in the DCD case, and several of those objections are unresolved. The Trustee has yet to review the claims and file any objections. Consequently, the solvency of the chapter 7 estate is unknown at this time.

### Conclusions of Law

The Trustee's First Amended Complaint states claims for avoidance of fraudulent conveyances under 11 U.S.C. § 548 and under Wyoming's Uniform Fraudulent Conveyance Act (UFCA) found at Wyo. Stat. Ann. § 34-14-101 through 113 (LexisNexis 2005), applicable by the exercise of the Trustee's avoidance powers found in 11 U.S.C. § 544. In the alternative, the Trustee contends the Assignments to MJC were to a non-entity and are void under Wyoming law. This case is decided under the law in effect prior to the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005.

The Trustee contends that either the 2000 Assignments or their recording are avoidable transfers. A transfer for purposes of § 548 of the Bankruptcy Code is made when the transfer is so perfected that a bona fide purchaser from the debtor cannot acquire an interest in the property superior to that of the transferee. 11 U.S.C. § 548 (d)(1). Under § 544(a)(2) & (3), the trustee, without regard to any knowledge of the trustee or a creditor, has the power to avoid any transfer of property of the debtor voidable under state law by a judgment creditor or a bona fide purchaser of real property that has perfected.

In Wyoming, overriding royalty interests are interests in real property. *Ferguson v. Coronado Oil Co.*, 884 P.2d 971, 977 (Wyo. 1994). Wyoming is a race-notice state. Interests in real property must be recorded in order to be effective against a subsequent purchaser or judgment lien creditor. Wyo. Stat. Ann. § 34-1-120 (LexisNexis 2005). Therefore, for purposes of either § 544 or § 548, the transfers at issue occurred when DCD recorded the Assignments to MJC on July 10, 2003.

The elements the Trustee must prove under either state or federal fraudulent conveyance law are similar. Under § 548,

> (a)(1) The trustee may avoid any transfer of an interest of the debtor in property . . . that was made . . . on or within one year before the date of the filing of the petition, if the debtor voluntarily or involuntarily —
>
> (A)   made such transfer . . . with actual intent to hinder, delay, or defraud any entity to which the debtor was or became, on or after the date that such transfer was made or such obligation was incurred, indebted; or

   (B) (i) received less than a reasonably equivalent value in exchange for such transfer or obligation; and . . .

    (ii) (I) was insolvent on the date that such transfer was made or such obligation was incurred, or became insolvent as a result of such transfer or obligation;

    (II) was engaged in business or a transaction, or was about to engage in business or a transaction, for which any property remaining with the debtor was an unreasonably small capital; or

    (III) intended to incur, or believed that the debtor would incur, debts that would be beyond the debtor's ability to pay as such debts matured.

Under Wyoming's UFCA:

 Every conveyance made and every obligation incurred by a person who is or will be thereby rendered insolvent is fraudulent as to creditors without regard to his actual intent if the conveyance is made or the obligation is incurred without a fair consideration. Wyo. Stat. Ann. § 34-14-105.

and

 Every conveyance made and every obligation incurred with actual intent . . . to hinder, delay, or defraud either present or future creditors, is fraudulent as to both present and future creditors. Wyo. Stat. Ann. § 34-14-108.

Three issues are in dispute under the Trustee's theories of this case. They are: whether DCD was insolvent, was rendered insolvent, or had unreasonably small capital at the time DCD created or recorded the Assignments under § 548 (a)(1)(B)(ii) and Wyo. Stat. Ann. §§ 34-14-105 through 106; whether the Assignments were made with fraudulent intent under § 548 (a)(1)(A) and Wyo. Stat. Ann. § 34-14-108; and whether MJC is an entity capable of accepting legal title to real property.

Solvency

The test for insolvency under both the UFCA and § 548 is a balance sheet test. Wyo. Stat. Ann. § 34-14-103 (LexisNexis 2005); 11 U.S.C. § 103 (32)(A). None of the evidence introduced on the issue of DCD's solvency on July 10, 2003 is determinative and some is not credible. The 2003 DCD tax return filed by the Trustee contains a balance sheet based on book values so low as to be absurd in the context of the recent sale of the assets for $1,600,000. Nor does the 2003 tax return contain any suggestion that DCD had unreasonably low capital during that tax year. In fact, no evidence before the court addressed the capital position of DCD during 2003 or any other year. Cross's tax returns contains no evidence of the value of DCD's assets or liabilities.

DCD, although it always maintained it was solvent, used figures which differed wildly depending on the context. DCD's Chapter 11 schedules appear to have no relationship to the actual liquidation sale price the Trustee received for the assets, and the figures in the DCD's Chapter 11 financial reports are unrealistic. The Trustee has failed to establish a requisite element of his constructive fraud claims.

Actual Fraud

To avoid a transfer under § 548(a)(1)(A) or Wyo. Stat. Ann. § 34-14-108, the trustee must prove actual fraud. *Taylor v. Rupp (In re Taylor)*, 133 F.3d 1336, 1338 (10th Cir. 1998); *In the Matter of the Estate of Reed*, 566 P.2d 587, 590 (Wyo. 1977). Circumstantial evidence may be admitted by establishing certain badges of fraud.

The court in the case of *Zubrod v. Kelsey (In re Kelsey)*, 270 B.R. 776 (10th Cir. BAP 2001) listed many of the badges of fraud. They include:

whether the transfer was to an insider; whether the debtor retained possession or control of the property after the transfer; concealment of the transfer; pending or threatened litigation against the debtor at the time of transfer; a transfer of substantially all of the debtor's assets; absconding by the debtor; removal or concealment of assets; reasonably equivalent value in exchange for the transfer; the debtor's insolvency at the time of the transfer; the proximity in time of the transfer to the incurrence of a substantial debt; and a transfer of substantial business assets to a lienor followed by a subsequent transfer of such assets to an insider of the debtor. *Id.* at 782, *citing, In re Taylor* at 1338-1339.

The Trustee contends that the transfers to MJC were the result of fraudulent intent by Cross, acting on behalf of DCD. The Trustee points to the following: DCD recorded the Assignments two weeks before DCD filed its Chapter 11 bankruptcy case; the Assignments were made to MJC which is not a legal entity that could be investigated or discovered; a close family relationship exists between Cross and Melissa; Cross maintained control over Melissa's oil and gas interests even after Melissa became an adult; Melissa had minimal knowledge of her ownership rights in oil and gas properties; and allegedly, no consideration was paid for the transfers.

Even if the Assignments were made without consideration, which is debatable, the other factors do not convince the court that Cross acted with fraudulent intent. Cross's testimony was credible that he believed the overriding royalty interests belonged to Melissa at the time the Assignments were executed in 2000, and he clearly believed that Melissa had paid consideration for the Assignments by relinquishing her shallow gas rights. MJC was

a name used for Melissa's oil and gas interests at least since 2000, and was not invented immediately prior to the filing of DCD's petition. Cross appears to display a lack of diligence with regard to record keeping, which supports a conclusion that the later recordings were intended to protect Melissa's interests (that Cross believed were legitimate) rather than to hide assets from the creditors. The Assignments were one in a series of gifts made to Melissa since she was a child and were part of established practice in their family. Based on those factors, the court concludes that Cross recorded the Assignments to clarify ownership interests Melissa had for at least three years and were not made with fraudulent intent.

MJC Oil & Gas

For his last claim, the Trustee contends "MJC Oil & Gas" is not an entity that can accept title to real property, and therefore, the Assignments were a nullity. Melissa characterized MJC as a d/b/a, in other words a sole or individual proprietorship.

A sole proprietorship is defined as "[a] business in which one person owns all the assets, owes all the liabilities, and operates in his or her personal capacity." Black's Law Dictionary 1398 (7th ed. 1999). Accordingly, when property is titled in the name of a sole proprietorship, it is owned by the person who is doing business under that name. The individual owner is taxed for business activities conducted by a sole proprietorship. 9 Mertens Law of Fed. Income Tax'n § 35A:05 (2005); *Young v. C.I.R.,* 650 F.2d 1083 (9th Cir. 1981).

In this case, MJC was a name used for Melissa's sole proprietorship at least since 2000. The Assignments were not made to a distinct legal entity which did not or could not exist in fact or law. Rather, MJC was a sole proprietorship at the time of the Assignments and thus, the Assignments were effectively made to Melissa. The Assignments are not avoidable under the Trustee's theory that they were failed gifts for lack of a legal recipient.

## Conclusion

The Trustee has failed to prove that the Assignments are avoidable as transfers made for no consideration because he did not prove DCD was insolvent at the time of the Assignments or their recording. The claims of actual fraud are not born out by the evidence, and MJC Oil and Gas is a legitimate sole proprietorship through which Melissa Cross may own property and conduct business. The court will enter judgment for the defendants on all claims.

DATED this ___ day of February, 2006.

By the Court

_____
HONORABLE PETER J. MCNIFF
United States Bankruptcy Judge

Service to:
    Anthony Wendtland
    James Edwards